Clarence J. Henry, J.
This is a proceeding under article 78 of the Civil Practice Act whereby the petitioning State Insurance Fund (hereafter referred to as the “ Fund ”), seeks an order (1) directing the respondents, appropriate officials of the City of Rochester (hereafter referred to as the “ City ”) to remove from the 1960-61 tax rolls of the city a tax assessment of $78,300 *978 and resulting tax lien of $3,766.20, on real property owned by the Fund in said city, at No. 24-30 Plymouth Avenue North; (2) declaring said real property exempt from taxation; (3) declaring the City without power to assess and tax such real property; (4) declaring such assessment and tax void ab initio; and (5) removing such assessment and tax as a lien and cloud upon the title to said real property.
Title to the premises, a two-story building, was acquired by the Fund on March 31,1960. Prior to that date correspondence between the Fund and the City Comptroller indicated substantial agreement on the part of the City that the property would become tax-exempt upon acquisition of title by the Fund. However, on or about May 19, 1960, the Fund was informed that, inasmuch as the City had learned that the first floor of the building (approximately 50% of the whole) had been rented by the Fund to a private enterprise (the Metropolitan Life Insurance Company), the property had been totally assessed for the tax year 1960-61. Refusal of ensuing requests on the part of the Fund for exemption has resulted in these proceedings.
Conceivably, the Fund might have sought support for its claim to exemption through advocacy of a literal construction of the applicable statute (Real Property Tax Law, § 404, subd. 1). That section reads, in part, as follows: “1. Real property owned by the state of New York, or any department or agency thereof * * * is and shall be deemed to have been and to be exempt from taxation
As the State, through the Legislature, is the basic taxing authority (N. Y. Const., art. XVI, § 1), and has complete control of exemptions by general laws (same section), the concise, unqualified wording of the quoted section suggests legislative intent that real property owned by the state, its departments or agencies, should be exempt from taxation regardless of the purpose for which it is held, whether in a proprietary capacity or for the sovereign uses of the State. Such has been the conclusion reached in other States, under similar provisions (see Ann. 3.A. L. R., p. 1440, and authorities there assembled). The State has the power to determine what, realty shall and shall not be taxed (People ex rel. Buffalo & Fort Erie Public Bridge Auth. v. Davis, 277 N. Y. 292), and having stated in clear, unequivocal language, and without limitation, that property belonging to the State, its departments or agencies, is exempt, the matter could very well be said to have been effectively concluded.
No decision has been discovered in this State covering a situation where property held in the name of the State itself but for *979 a proprietary purpose, i.e., private uses, has been questioned for tax ends, but had such a question arisen there is suspicion that, regardless of the purpose for which the property was held, no determination that it was taxable would have been reached under the unlimited exemption of statutes earlier or presently applicable. The tenor of this conclusion is derived from the theory underlying the decision in People ex rel. Smith v. Miller (94 App. Div. 567, 570) a tax matter, where the Third Department said: ‘ ‘ The plain wording of the statute, in our judgment, leaves no room for construction. If doubt exists, however, as to its meaning, that doubt must be resolved in favor of the State.” (See, also, Minor v. Erie R. R. Co., 171 N. Y. 566; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 115.)
Pursuing such reasoning, it would follow that if property held in the name of the State itself, regardless of purpose, is tax-exempt, property held by an agency of the State, regardless of purpose, is likewise exempt. Particularly would this be so when it is noted that subdivision 1 of section 404 of the Beal Property Tax Law broadened the list of statutory exemptions. The previously applicable Tax Law (§4, subd. 2) exempted “ Property of this state ”. That provision has been held to include State agencies, but with limitations later discussed. Subdivision 1 of section 404, adopted in 1958, added the words “ or agency thereof ’ ’ and, along the lines earlier suggested, literal construction could support the conclusion of legislative intent specifically to exempt from taxation real property owned by agencies of the State, regardless of the purpose for which such property was held. Some further support for the suggestion appears in subdivision 1 of section 406 of the Beal Property Tax Law (adopted simultaneously with section 404) which exempts certain real property owned by a municipal corporation but only when “ held for a public use ” — a limitation not applied by the Legislature to real property owned by the State or its agencies. However, a similar limitation appeared in the earlier Tax Law provision relative to municipally owned property (§ 4, subd. 3), and such support as derives from reading sections 404 and 406 together, comes from the fact that they were adopted after the decisions about to be mentioned.
The foregoing reasoning — whatever its quality — is abandoned for the purpose of the determination herein. Counsel for the Fund has pressed its claim for exemption on other grounds and, as they provide ample and legal support for the Fund’s position, the decision will rest on those grounds.
Our courts, while not specifically abjuring literal construction of the exemption sections, have long been inclined to hold that *980 property belonging to a State or one of its agencies is exempt from taxation only when held for a public use (see Matter of Hamilton, 148 N. Y. 310), thus reading in to the then extant and applicable exemption provisions of the Tax Law a limitation which the Legislature saw fit to impose only upon municipal corporations.
In Bush Term Co. v. City of New York (282 N. Y. 306, 318, 321), the Court of Appeals, construing a special statute but recognizing the provisions of the then prevailing subdivision 2 of section 4 of the Tax Law, reiterated that view in the following comment (p. 318): “ Though ordinarily only clear and unequivocal language can create a special exemption from a general tax, yet property of a State or an agency of the State, held for a public purpose, is ordinarily not subject to a tax, and a tax imposed by a statute, though general in terms, will not be held to apply to such property. ” (Emphasis mine.) And then proceeded to further define the rule as follows (p. 321): “ Property held by an agency of the State is ordinarily immune from taxation only while it is used for a public purpose. Property used primarily to obtain revenue or profit is not held for a public use and is not ordinarily immune from taxation, but property held by a State agency primarily for a public use does not lose immunity because the State agency incidentally derives income from the property.” (Emphasis mine.)
The rule, as thus defined, was reapplied in Matter of State Ins. Fund v. Boyland (282 App. Div. 516, affd. 309 N. Y. 1009) (also under subdivision 2 of section 4 of the old Tax Law), although the principal question there involved was whether the State Insurance Fund was a State agency — which the First Department decided affirmatively.
Applying the court rule to the instant matter — the Fund’s status as a State agency having been conclusively established by the Boyland decision (supra) — the only question here is whether the rental of approximately 50% of its owned premises for a private use is, or is not, an incident of the execution of the Fund’s public purpose, exempting the property from city taxation if such rental is viewed as incidental, and subjecting it to taxation — at least partially (claims the City) — if it is more than an incident to use for State purposes. I conclude that such rental is incidental to the public purpose. Although the Bush Terminal case (282 N. Y. 306, supra) suggested that the “ test may be one of degree ” (p. 316), it actually held that the primary use for which realty is held by a state agency determines its taxability (see pp. 321, 322). There, although the greater portion of the property was rented out for private uses, its primary *981 purpose was determined to be that of a public freight terminal and the rentals were but incidental to that. Primary use of the realty — not percentage, or some other measure of comparative use or occupancy — is thus the correct criterion, and the primary purpose of the Fund in the acquisition and use of the realty questioned herein is clearly to provide itself with local administrative headquarters, in furtherance of its public and governmental purposes. For such purposes it required housing of suitable quality and location and, a qualified property having been obtained, the fact that it contained more space than the Fund immediately required and thus permitted rental occupancy by a private user — even to the extent of 50% — cannot be regarded as other than incidental to the primary public use. The property is, therefore, fully exempt from taxation by the City and the five specific prayers of the petition are granted.